IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47371

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 30, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| KARL RICHARDSON, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

Judgment of conviction for grand theft and being a persistent violator, <u>affirmed</u>.

Randall S. Barnum of Barnum Law, PLLC, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

LORELLO, Judge

Karl Richardson appeals from his judgment of conviction for grand theft and being a persistent violator. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Richardson was charged with grand theft, I.C. §§ 18-2403(1) and 18-2407(1)(b), and being a persistent violator, I.C. § 19-2514, for taking a boat, a boat trailer, and an outboard motor. At trial, an officer testified he gave Richardson *Miranda*[1] warnings during an interview. When the prosecutor asked the officer why he administered *Miranda* warnings, the officer testified he was

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

planning on taking Richardson into custody at the end of the interview because Richardson had an outstanding arrest warrant for an unrelated matter.

Richardson moved for a mistrial, arguing he was prejudiced by the officer's mention of the unrelated arrest warrant. The district court declined to decide the motion at that time. At the beginning of the next day of trial, the district court denied Richardson's motion and indicated it would issue a curative instruction. At the close of evidence, the district court instructed the jury to consider the mention of the arrest warrant only as an explanation for the officer's actions during the interview and not to consider it for purposes of determining guilt. As part of the instruction, the district court informed the jury that the arrest warrant was for Richardson's failure to appear for a minor traffic offense.

As part of the State's case-in-chief, one of the victims testified he had received a fishing knife from his father and that this knife, along with a fifty-year-old tackle box, had been inside the boat when it was taken. In closing argument, the prosecutor related a personal story about how his grandfather had given him a fishing knife and how he had many memories associated with this knife. The prosecutor stated he thought of this whenever the victim talked about the knife the victim had received from his father. The prosecutor argued that the victim's knife and tackle box, though trivial, were irreplaceable. Richardson did not object to this argument.

The jury found Richardson guilty of grand theft and the persistent violator sentencing enhancement. Richardson moved for a new trial, again arguing that the officer's mention of the arrest warrant was prejudicial. The district court denied the motion. Richardson appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record.

> Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019).

## III.

## ANALYSIS

Richardson argues the district court erred in denying his motion for a mistrial and his motion for a new trial. Richardson also asserts the State committed prosecutorial misconduct during closing argument amounting to fundamental error. The State responds that the district court correctly denied the motion for a mistrial because there was no error and that, even if there was, the error was harmless. The State also contends that the district court did not err in denying Richardson's motion for a new trial. Finally, the State asserts that the prosecutor did not engage in misconduct and that, even if part of the prosecutor's closing argument was improper, Richardson has failed to meet his burden of showing fundamental error. We hold that Richardson has failed to show the district court erred in denying both his motion for a mistrial and his motion for a new trial and has failed to show fundamental error stemming from the prosecutor's closing argument.

3

**A.     Motion for a Mistrial**

Richardson asserts the State introduced error when the officer testified about Richardson's arrest warrant and that the district court erred by not promptly striking the testimony and by waiting until the close of evidence to issue a curative instruction. In response, the State argues that the officer's testimony about the arrest warrant was admissible and, therefore, not error because it explained why the officer gave Richardson *Miranda* warnings. The State further contends that Richardson did not preserve his claims that the district court was required to strike the testimony and immediately issue a curative instruction. Finally, the State argues that any error was harmless. We hold that the officer's testimony about the arrest warrant was error but, because the error was harmless, it does not warrant reversal.

The threshold inquiry is whether the State introduced error. *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993). Evidence of a past crime is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character but may be admissible for another purpose. I.R.E. 404(b). Evidence of an individual's status as a probationer or parolee is evidence of a prior crime for purposes of I.R.E. 404(b). *State v. Jones*, 167 Idaho 353, 359, 470 P.3d 1162, 1168 (2020). The State contends that the officer's mention of the arrest warrant was not error because it was not offered to prove Richardson's criminal propensity but, instead, to explain why the officer gave *Miranda* warnings. In support of its position, the State cites *State v. Yakovac*, 145 Idaho 437, 180 P.3d 476 (2008), which held that testimony regarding arrest warrants for a defendant was relevant to explain the police officers' actions. This holding from *Yakovac*, however, was recently called into question by *Jones*. The two-justice lead opinion in *Jones* rejected the State's assertion that *Yakovac* stood for the broad proposition that "evidence is always relevant in showing the propriety of a search conducted by law enforcement." *Jones*, 167 Idaho at 360, 366, 470 P.3d at 1169 (Burdick, C.J., lead opinion). Rather, the lead opinion articulated the standard as follows: "when facts arise in a case that give the appearance of improper police conduct, but additional evidence exists that, if admitted at trial, would help demonstrate the propriety of the police conduct, such evidence may be relevant for that non-propensity purpose." *Jones*, 167 Idaho at 363, 470 P.3d at 1172. The lead opinion further distinguished the relevance analysis under I.R.E. 404(b) from the *res gestae* doctrine the Court rejected in *State v. Kralovec*, 161 Idaho 569, 388 P.3d 583 (2017). The lead

4

opinion explained that the "holding in *Kralovec* does not make all evidence that would fall within the definition of *res gestae* at common law inadmissible. Rather, *Kralovec* explains that the Idaho Rules of Evidence govern the admissibility of evidence, rather than common law principles." *Jones*, 167 Idaho at 363, 470 P.3d at 1172. In other words, "[e]vidence that would have been considered *res gestae* at common law is admissible only if it meets the requirements of the Idaho Rules of Evidence." *Id.* However, the three remaining justices in *Jones* issued a separate opinion, concluding that *Yakovac* was effectively overruled by the Court's opinion in *Kralovec*. *See Jones*, 167 Idaho at 366-67, 470 P.3d at 1175-76 (Stegner, J., concurring).

In *Jones*, evidence of the defendant's probationary status was admitted "to provide context for [a] search." *Id.* at 360, 470 P.3d at 1169 (Burdick, C.J., lead opinion). The two-justice lead opinion, applying its test for relevance of such evidence under I.R.E. 404(b), determined that evidence of the defendant's probationary status was relevant to explain why police officers had searched the defendant's underwear--without knowing of the probationary status and the defendant's waiver of his right against unreasonable searches, "the jury would be left wondering why the police suddenly conducted such an invasive search of [the defendant's] person." *Jones*, 167 Idaho at 360, 470 P.3d at 1169.

The three-justice concurrence disagreed and wrote that "nothing about the fact of probation is probative or material to the State's burden of establishing the elements of the crimes with which [the defendant] was charged." *Id.* at 366, 470 P.3d at 1175 (Stegner, J., concurring). In the concurrence's view, because the "contextual justification" in *Yakovac* had been rejected by *Kralovec*, evidence of the defendant's probationary status was inadmissible. *Jones*, 167 Idaho at 367, 470 P.3d at 1176.

Although the State acknowledges *Jones*,[2] it does not advance any argument for why an explanation of the officer's *Miranda* warnings was necessary to avoid the appearance of impropriety. Unlike *Jones*, where a search of the defendant's underwear would seem unconstitutional absent some explanation, here the officer would appear to be complying with

---

[2] With respect to *Jones*, the State "acknowledges that a majority of the Idaho Supreme Court recently called *Yakovac* into question," but contends that "*Yakovac* has not been overruled and is still binding precedent."

5

constitutional requirements by giving *Miranda* warnings. The State has failed to show that there was an appearance of impropriety that had to be avoided by explaining the officer's actions. As such, the State has failed to satisfy the criteria articulated by the lead opinion in *Jones*, making the testimony about the arrest warrant irrelevant and inadmissible. *See Jones*, 167 Idaho at 360, 470 P.3d at 1169 (Burdick, C.J., lead opinion). The State's argument also fails under the view expressed by the three-justice concurrence as, under that view, evidence is irrelevant if offered solely to explain an officer's actions. *See id.* at 366, 470 P.3d at 1175 (Stegner, J., concurring). Applying both the lead opinion and the concurrence in *Jones*, the State introduced error when the officer testified that Richardson had an arrest warrant.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The Idaho Supreme Court clarified the harmless error standard for an objected-to, nonconstitutionally-based error in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error.[3] *Id.* at 674, 462 P.3d at 1138. The reviewing court must take into account what effect the error had or reasonably may have had on the jury (in the context of the total setting) and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

We first consider the probative force of the error. A district court's curative instruction, while not necessarily dispositive, is a factor to consider when determining the probative force of the error. *State v. Watkins*, 152 Idaho 764, 767, 274 P.3d 1279, 1282 (Ct. App. 2012). On appeal, we presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho

---

[3]     We recognize that *Garcia* dealt with an objected-to, nonconstitutionally-based error that, when shown, shifts the burden to the State of demonstrating that the error is harmless beyond a reasonable doubt. *Garcia*, 166 Idaho at 663, 462 P.3d at 1137. This type of error differs categorically from a motion for a mistrial, where there is no burden shifting in the harmless error analysis. *See, e.g.*, *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105. However, the two share common roots in the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18 (1967). *See Garcia*, 166 Idaho at 663, 462 P.3d at 1137; *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105. As the Idaho Supreme Court recently noted, *Chapman*'s harmless error standard has been modified by *Yates v. Evatt*, 500 U.S. 391 (1991). *Garcia*, 166 Idaho at 664, 462 P.3d at 1138. We follow suit by recognizing that *Yates* modifies *Chapman*'s harmless error standard in the mistrial context.

747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). The district court instructed the jury as follows:

> During the course of the trial, you heard testimony from an officer that referenced an outstanding arrest warrant for [Richardson]. It involved his failure to appear for a minor traffic offense and is irrelevant to the matter set before you. It was given merely to explain the officer's actions at the time. You are not to consider it as evidence of guilt in this case and it should not be mentioned or considered in your deliberations.

Richardson acknowledges that a jury is presumed to follow jury instructions, but argues the district court erred by failing to promptly issue a curative instruction.[4] He asserts that the delay between the officer's testimony and the curative instruction meant the jury "was allowed to view all evidence subsequent to [the officer's] testimony through a lens colored by evidence that [Richardson] had an outstanding warrant for his arrest and that he would be taken into custody for that offense."[5] The State argues that Richardson failed to preserve this argument because he did not make such a request but, instead, suggested that an immediate curative instruction would not be helpful. We agree that the argument Richardson is making on appeal is not preserved because the record reflects he took a different view of the propriety of a curative instruction than the one he is taking on appeal. *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (stating that appellate court review is limited to the evidence, theories, and arguments that were presented below). Moreover, Richardson ultimately agreed to the instruction given, therefore inviting any claim of error related to the instruction. *See State v. Atkinson*, 124 Idaho 816, 819,

---

[4]     Richardson also asserts the district court should have struck the officer's testimony about the arrest warrant. As the State correctly notes, Richardson did not move to strike this testimony. While addressing Richardson's motion for a mistrial, the prosecutor mentioned the possibility of striking the testimony but did not make a motion to strike the testimony. Generally, issues not raised below may not be considered for the first time on appeal. *Fodge*, 121 Idaho at 195, 824 P.2d at 126. Richardson has failed to preserve his argument that the district court erred by not striking the testimony.

[5]     Richardson faults the district court for waiting four days before ruling on his motion for a mistrial and giving a curative instruction. This is somewhat misleading. Richardson moved for a mistrial on a Friday and trial did not resume until the following Tuesday. While this was a four-day period, the district court ruled on the motion and issued a curative instruction the next trial day after Richardson moved for a mistrial.

864 P.2d 654, 657 (Ct. App. 1993) (explaining the doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error).

Even considering the merits of Richardson's contention, we do not agree that the district court erred by failing to give a prompt curative instruction. While some appellate decisions have used the word "promptly" in describing how a district court issued curative instructions, *see, e.g.*, *State v. Hedger*, 115 Idaho 598, 601, 768 P.2d 1331, 1334 (1989), promptness is not a prerequisite for the presumption that a jury followed an instruction, *see State v. Saenz*, 167 Idaho 443, 451, 470 P.3d 1252, 1260 (Ct. App. 2020) (holding that presumption applied even though error occurred after district court gave jury instruction). As such, we presume that the jury followed the district court's instructions despite the delay between the error and the curative instruction.

Aside from the delay, Richardson presents no argument why the jury should not be presumed to have followed the district court's instruction. As such, we presume that the jury disregarded the mention of Richardson's arrest warrant except for the purpose of explaining the officer's actions as the district court instructed it to do. Thus, Richardson has failed to show that the jury considered evidence of the arrest warrant in determining his guilt. Moreover, the probative force of the error was minimal because the purpose for which the evidence was admitted had little or no relevance to the elements of the charged crime, and there was no dispute at trial regarding why the officer gave *Miranda* warnings to Richardson.[6]

Next, we weigh the probative force of the entire record while excluding the error. At trial, two witnesses testified that they had reviewed a surveillance video that showed a vehicle entering a parking lot; backing up to the victim's boat, which was stored on a trailer; and driving away with the boat after attaching to the trailer. This vehicle had similar identifying features to a vehicle owned by Richardson, as shown by other portions of the surveillance footage and a photograph of Richardson's vehicle. Another witness testified that Richardson brought the boat to her house on the same day, where Richardson and an accomplice started to remove the motor from the boat. Richardson's accomplice testified that Richardson took the boat. The accomplice also testified

---

[6]    Richardson also asserts that the curative instruction painted him as a person who "historically breaks the law and fails to appear in court, even for minor offenses." We disagree. By informing the jury that the warrant was for a minor traffic offense, the district court actually decreased the probative force of the error.

that he helped Richardson take the motor off of the boat to sell to another person. Finally, when Richardson became aware that the motor was reported as stolen, Richardson took what remained of the boat and trailer to the police department.

Richardson presented an alibi defense based on other witnesses' testimony that Richardson had been watching some children on the morning of the theft. The jury evidently did not find that this defense created a reasonable doubt regarding Richardson's guilt, and Richardson has presented no reason why the error--allowing the jury to consider the evidence of the arrest warrant solely as explaining the officer's actions--negatively impacted his defense.

Weighing the probative value of the error against the probative value of the record as a whole without the error, we conclude that the error did not have a continuing effect on the trial and are satisfied beyond a reasonable doubt that the error did not contribute to the jury's verdict. Thus, there is no reversible error relating to the admission of the improper warrant evidence that would entitle Richardson to a new trial.

### B.    Motion for a New Trial

Richardson moved for a new trial pursuant to I.C.R. 34. The basis for Richardson's motion was the district court's denial of his motion for judgment of acquittal. The district court characterized Richardson's Rule 34 motion as seeking relief on the ground that the court erred in deciding a question of law during the course of the trial, I.C. § 19-2406(5), and denied the motion.

On appeal, Richardson contends the district court abused its discretion by denying his motion for a new trial. Specifically, Richardson argues that the district court erred because, at trial, the district court was required to strike the officer's testimony about the arrest warrant and not delay issuing a curative instruction. As discussed above, Richardson failed to preserve his argument that the district court was required to strike the testimony and promptness is not a prerequisite for curative instructions to be effective. Thus, Richardson has failed to show that the district court erred in denying his motion for a new trial.

### C.    Prosecutorial Misconduct

Richardson contends the prosecutor committed prosecutorial misconduct during closing argument by relating a personal story about a fishing knife from his father and by mentioning the victim's irreplaceable loss of a knife and a tackle box. Richardson admits he did not object to this part of the prosecutor's closing argument, but asserts the prosecutor's statements impermissibly

appealed to the passions or prejudices of the jury and amounted to fundamental error. The State argues the prosecutor's statements did not impermissibly appeal to the jury's passions or prejudices and that, even if they did, the error does not rise to fundamental error. We hold that Richardson has failed to show fundamental error.

As Richardson admits, he made no contemporaneous objection to the prosecutor's closing argument at trial. Where prosecutorial misconduct was not objected to during trial, this Court may only reverse when the misconduct constitutes fundamental error. *Miller*, 165 at 122, 443 P.3d at 136. In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. *Id.* at 119, 443 P.3d at 133. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, which means the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, meaning that the error identified in the first and second prongs of the test actually affected the outcome of the trial proceedings. *Id.* at 119-20, 443 P.3d at 133-34.

In addressing the first prong of the analysis, we determine whether the statements in the prosecutor's closing argument violated one of Richardson's unwaived constitutional rights. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

10

Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588; *see also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998). A defendant's constitutional right to a fair trial "is violated where a prosecutor attempts to 'have a jury reach its decision on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence.'" *State v. Adamcik*, 152 Idaho 445, 480, 272 P.3d 417, 452 (2012) (quoting *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010)).

At the beginning of closing argument, the prosecutor stated that "there's something that keeps coming up in this case that kind of hits home for me." The prosecutor related how his grandfather had given him a fishing knife and how the knife "has all those memories and things that go along that don't come with even a nicer fishing knife. And every time [the victim] talks about the fishing knife that was stolen that his father gave him, it makes me think of that." The prosecutor continued:

> Because what was stolen in this case is more than just a boat. Insurance can take care of a boat. But it's all those other things that were stolen. You heard [the victim] testify about a tackle box with 50 years of tackle that he's collected. And he says it every time he's told that story to me too, and he said it when he testified, as if this is something that everybody does, you go around and collect tackle. I've never heard of somebody else doing this.
> But it was important to him. It was an important memory that he created for himself over these years. And that was just thrown away.
> You heard testimony in the interview that all those items that couldn't be sold, oh, those are tossed.

The prosecutor concluded his argument by stating that "there are items, even trivial, if you think that the[y] were stolen from [the victim and his wife] that they can't replace, I'm going to ask you to leave that in your mind for a moment."

On appeal, the State characterizes the prosecutor's personal story as, "at worst . . . a sappy story" that would not arouse the passions of the jury. But whether he succeeded in arousing the passions of the jury is not the correct standard--the standard under *Adamcik* is whether the prosecutor *attempted* to do so. *See Adamcik*, 152 Idaho at 480, 272 P.3d at 452. The prosecutor connected his personal story to the victim's loss of sentimental items, which appears as an attempt to have the jury sympathize with the victim.

11

The State also asserts that the prosecutor's remarks regarding his personal story were ambiguous and should generally not be construed against the State. *See State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009). However, the State has not explained how the prosecutor's personal story was ambiguous or how it could have any purpose other than to appeal to the sympathy of the jury. Absent an ambiguity, *Severson* does not require the prosecutor's personal story to be construed in the State's favor.

As for the prosecutor's statements regarding the sentimental value of the knife and tackle box, the State contends these statements were proper because the victim testified regarding the emotional value of the items. The State is correct that both sides are entitled to discuss the evidence presented at trial. *Sheahan*, 139 Idaho at 280, 77 P.3d at 969. However, a prosecutor should avoid placing undue emphasis on irrelevant facts introduced at trial. *State v. Smoot*, 99 Idaho 855, 860, 590 P.2d 1001, 1006 (1978); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. As Richardson notes, the information did not charge him with theft of the knife or tackle box. Furthermore, the sentimental value of the items had no relevance to the charge of grand theft. *See* I.C. §§ 18-2403(1), 18-2407(1)(b). By relating a personal story and bringing up the sentimental value of items Richardson was not charged with stealing, the prosecutor emphasized irrelevant evidence as part of his closing argument. However, the prosecutor's closing argument, although improper, was not so inflammatory as to rise to the level of a due process violation.

Under the second prong of the analysis, Richardson must show the record contains evidence of the error and evidence that his counsel did not make a tactical decision to not object to the error. *See Miller*, 165 Idaho at 119, 443 P.3d at 133. In determining whether the lack of an objection by trial counsel was tactical, the court begins with the strong presumption that counsel was competent and trial tactics were based on sound legal strategy. *Saenz*, 167 Idaho at 449, 470 P.3d at 1258. An assertion on appeal that counsel did not make a strategic decision is not enough to overcome this presumption of competence. *Id.*; *see also Miller*, 165 Idaho at 119, 443 P.3d at 133. Rather, there must be actual evidence in the record that demonstrates the lack of objection was not tactical. *Saenz*, 167 Idaho at 449, 470 P.3d at 1258; *Miller*, 165 Idaho at 119, 443 P.3d at 133.

As evident from our analysis of the first prong, there is evidence of the error in the record. However, as the State notes, Richardson fails to provide any citation to the record to support his

contention that the lack of an objection was not tactical. Under *Saenz*, Richardson's assertion that "there is no way that failing to object could be interpreted as a strategic decision," standing alone, is not enough to satisfy this requirement because such an assertion is not evidence. Therefore, Richardson has not met his burden under the second prong of the fundamental error analysis.

Additionally, we note the record contains evidence that Richardson's trial counsel made a tactical decision to not object to the prosecutor's comments. One of Richardson's defenses at trial was that someone else committed the theft and that Richardson did not know the boat was stolen. In closing argument, Richardson's trial counsel stated:

> Of course we feel sad about what happened to [the victim] and we sympathize with him and his family that they lost their boat and somebody stole their personal items. Nobody wants to go through that. But what we have to figure out today is who actually stole that boat.

This response indicates that Richardson's trial counsel made a tactical decision to not contemporaneously object to the prosecutor's personal story or comments regarding the sentimental value of the knife and tackle box but, instead, responded directly by expressing a similar idea--sympathy for the victim--during closing argument.

Richardson also fails to satisfy the third prong of the fundamental error analysis. At times, prosecutorial misconduct during closing argument can be remedied by a district court's instruction to the jury that the attorneys' arguments are not evidence. *Miller*, 165 Idaho at 123, 443 P.3d at 137. When assessing the impact of a remedial jury instruction "this Court presumes the jury followed the court's jury instructions," *id.* at 124, 443 P.3d at 138, even when the error complained of occurs after the jury receives its instructions from the trial court, *see State v. Tupis*, 112 Idaho 767, 773, 735 P.2d 1078, 1084 (Ct. App. 1987).

The State argues that any prejudice from the prosecutor's comments was cured by the district court's instruction to the jury that arguments and statements made by counsel are not evidence. We presume this instruction cured the prejudice stemming from the prosecutor's personal story about the knife he got from his grandfather, as there was no evidence of this story presented during trial. However, this instruction would not have cured the prejudice from the prosecutor's comments regarding the sentimental value to the victim--as noted above, the victim testified to the emotional impact of the knife and tackle box being stolen. The prejudice stemmed not from the danger of arguments being confused with evidence, but from the prosecutor making

13

appeals to the jury's passions based on the evidence admitted at trial. The instruction relied on by the State does not cure the prejudice stemming from the prosecutor's comments on sentimental value.

Although the jury instruction does not completely cure the prejudice, Richardson has failed to show that the alleged error actually affected the outcome of the trial, which he must do to prevail on the third prong of the fundamental error analysis. *See Miller*, 165 Idaho at 120, 443 P.3d at 134. Showing a "reasonable possibility" does not satisfy the third prong. *Id.* Richardson's argument under the third prong is limited to the following assertion: "the outcome of the trial was likely affected by the prosecutor's inflammatory language." This argument is conclusory and cites an erroneous legal standard. Thus, Richardson has not met his burden on the third prong. Richardson has failed to show fundamental error from the prosecutor's closing argument.

## III.

## CONCLUSION

Richardson has failed to show the district court erred by denying his motion for a mistrial and his motion for a new trial. He has also failed to show the State committed prosecutorial misconduct amounting to fundamental error. Consequently, his judgment of conviction is affirmed.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.